Oral argument not to exceed 15 minutes per side. Mr. Bostick for the appellant. Good morning, Your Honors. May it please the Court, I'm Nick Bostick, appearing on behalf of all the plaintiffs, and I would like to reserve five minutes for a vote. You may. Thank you. Thank you. I believe that this case must be remanded to Judge Drain to allow us to amend and add more detail. At one point, I was going to argue that there's tension between Rule 8 meeting requirements and Rule 12, but I don't think there really is tension. I think Rule 12d answers the question here. The defendants filed their Rule 12 motion very early. They did not ask for a more definite statement. They did not identify a particular element that they thought was missing from any of the allegations. They simply relied on Bellatonic v. Twombly to say that it was conclusory and it didn't give them proper notice. We probably could have cured most everything. I'm quite confident we could have or would have invested in the case in the first place. We were not given an opportunity, and when Judge Drain agreed at the defendant's request and then agreed to rely on significant documents from the criminal case, then I think Rule 12d kicked in and it was mandatory that we have an opportunity to treat it as a Rule 56 motion. Did you seek permission to amend it in the district court? We did. In our responsive document. In what document did you do that? In document 31 below. What was the document? It was my response to the motion. You didn't file a motion? I did not file a motion for me to amend. So in the response to the motion for summary judgment, you said, and in addition, we'd like to amend or if you're going to rule against us, we'd like to amend. How was it couched? It was couched as a motion to amend specifically, and I'm looking at it. Motions to amend have to be filed separately. So is it a motion or is it language in a response? It's language in my response to the motion below, and below that is document number 31. Most of the language addressing that comes on the lower court record page ID 884 and 885. And also what I asked, and I don't know if I have the specific page size. It may be in the same area. Simply I asked to be allowed to add things to my responsive document, because to me the rule automatically converted it to a Rule 56. The 884 in the red spot is the fact section. Yes, and I believe as it spills over on the page 885, I talk about the seeking permission to amend and seeking permission to add additional information as if it were a Rule 56 response. And this would have been your second amendment, sir? Because there was an amendment, a complaint filed. Yes, the original complaint did not include Avis Fung Jr. It was filed in March of 2013. I don't know that this is worth spending a lot of time on, but you say, Plaintiffs hereby respond to the motion as opposed to a motion filed. We'll be asking the court to treat the motion as 100 Rule 56, allow a supplemental response after discovery, and allow amendment of the complaint or comply with in order for more definite statement. As I read that, that says something. That alerts the court to something that you're prospectively going to do. Correct. But you didn't do it. Later in that document, I specified some of the things that I felt we could provide if we were given an opportunity. And in the Eastern District, we have a 21-day window. For example, in the Western District, we have a 28-day window. So the volume of information from all the recordings that would have needed to be transcribed, the grand jury testimony, parts of it we had would have to be parsed. It was a major task, and I had a very short time frame within which to respond. And I had no discovery. But I don't really get that because the whole crux to this is that statements in the affidavit were allegedly knowingly false. So you know what statements you say are false. I understand if the trial is tomorrow you may not be able to prove it, but you could at least tell us somewhere along the way here what statements are false. You didn't say that in the district court. You didn't say that in response to the motion to dismiss. And you still haven't said that in our court. So I understand a lot of times we would remand if there was something that the district court really needed to do. But it seems to me you have had several opportunities to tell us what's false, what you believe to be false or what you think you could prove is false, and you still haven't done it. And the problem is the defendants didn't ask for a more definite statement. So I don't know what portions exactly it is that they're complaining about. But in my brief here and to Judge Green... They're complaining about the sufficiency of your complaint. So I don't understand why you can't respond to that repeated assertion that your complaint is not sufficiently definite. Just tell us what's false. Well, in these documents, I specified that we would be able to show from Michael Meads that the government knew his address was not that of Eugene, and Sylvia, and Gabrielle. We would have been able to show that. I don't have an affidavit from him, but that's one of the things that we specifically would have been able to show. And you said something about that's in some other document, but I'm taking you to page 27 of your brief where you say plaintiffs will present only one example of a false substance in the affidavit to the court, and that's the attack on Murray's reliability. The part you're talking about, is that from a separate document? Or kind of how does that connect with this? Because it does seem to me that the crux of your, you know, major part of your case is knowing use of false information. You should have had a Franks hearing and so on from there. And the same question as Judge McKeith was asking, what is the falsity? And am I right that that statement at page 27 of your brief is the only example that you give even now, which is that Murray, you know, was an unreliable person? That was attached to document 31 below. I think it was the police report that talked about him shooting at his wife. I believe that's part of it. The big quote that I was giving is that you're attacking paragraph 7 of the search warrant affidavit. In other words, your whole case to me rests on an assertion of false statements by various law enforcement people. So having a collateral attack on something doesn't get you there, it seems to me, is you need to specify and raise to a level of plausibility the falsity of specific statements. And this is the only one you give, is that right? In detail, yes. And with some supporting documents. Well, then the question, though, is a person can be an unreliable person completely out of control and yet be a reliable source of information. The statement doesn't say he's a saint. It says he has provided reliable information. We know that informants frequently have various problems, but you don't say he, for example, it says he provided driver's license information, this, that, and the other thing, and you never say, and that's a lie, and that's a lie. That's my question to you. And a big problem with that is part of my theory there is that they omitted to the judicial officer in the warrant the fact that he was having this crisis and that he was out of control and that they were not prosecuting him in the deal they gave him. So it is more difficult when I'm alleging that part of the misleading information is an omission. Well, and under Frank's, that usually isn't good enough, and you have to have, and again, help me if I'm wrong, let's say what I usually see is a well-lawyered allegation that says, and because of this, there would not have been enough to support a warrant or a reasonable magistrate would, if you give an argument, a reasonable magistrate would not have issued the warrant because of this. And again, I don't see any of that. Am I right? Well, you are, and perhaps I rely too heavily on the standards of Rule 8. Let me follow up on that, too, if I might. As Judge Boggs asked you, you're pointing towards Paragraph 7 of the 1 affidavit, and that affidavit, that part of that affidavit doesn't say anything about where somebody lives. So is there something else in one of these, what is it, two affidavits, is there something else in one of these two affidavits that's false as to where somebody was living at a particular time? Oh, just my beliefs. Well, don't say just. The answer is yes. It says, does the affidavit say that somebody was living in a certain place at a certain time, and that was false, and you're claiming the government knew that, and that the magistrate judge must have relied upon that or wouldn't have issued the affidavit? Only my beliefs, yes. Okay, so where do I find that in the affidavit? You haven't even told us what paragraph all this information makes false. I haven't committed these two affidavits to memory, so where do I find the falsity, where do I find the paragraph that you say contains a falsity with respect to Meeks? And that's where my reliance on Rule 8 may have gotten me in trouble. I couldn't, I didn't know what they were complaining about. I'm sorry, this is a simple question. Is there a paragraph in one of these affidavits that speaks to Meeks' address that you contend contains a falsity? And I'm sorry, I don't have them burned in my memory, and I can't tell you either. You can catch it by rebuttal. It's fine, otherwise we'll do our best to find it. You have your five minutes to rebuttal. May it please the Court, Patricia Day, Key for the Individual Defendants. There is a paragraph in the affidavit that says that Michael Meeks' registered address with the Secretary of State is that of his parents. You said registered address at the Secretary of State? With the Secretary of State, his driver's license says that he lives at Bedford House, and the affidavit says that, and that's what they relied on as his address. So, interestingly enough, for whatever reason, it doesn't say explicitly that he's actually living there or that that's his permanent domicile. It just says that's where he's registered. I think that's correct, Your Honor. Since you're on the topic, can you help us what document you think you're citing? Is this the affidavit for the search warrant? The affidavit for Meeks' home does say early on that they believe he lives there because his driver's license. It doesn't say driver's license, but it says Secretary of State, and in Michigan, that's the driver's license address. So are we talking about one of the sons here? The son, Michael Meeks, was a defendant in the criminal case, and they searched the home that plaintiffs allege was only his parents' home because they believed he lived there. Okay, so they were going to search the parents' home anyway? There's no question the parents lived there, right? Correct. So the alleged falsity is that the son, although his driver's license said that house, didn't really live in that house. He lived someplace else? Yes. Have they identified where else he lived? Yes, and there was a search warrant. Did you search that? Yes. Well, how'd you get permission to search that house? We got a search warrant later on, about five days later, when they didn't find Michael Meeks, and I assume his parents said he didn't live there anymore. It doesn't say that in the affidavit. Another search warrant was obtained, and they searched an address on Timberlake Road. So I know I'm asking you to make your closing argument, but what do you understand to be the problem from all that? Nothing, and I didn't understand that in the district court he made this argument at all, that it was a false statement that Michael Meeks' driver's license indicated that he lived in his home. The parents are Eugene and Sylvia? Yes. And did you have independent cause to search their home for them? I mean, I can sort of see where they might have a complaint if the only reason you searched their house was because they thought Michael was there. And that is correct. The only reason we searched their house was because the agents believed that Michael lived there, and they were searching for his house. In terms of who might have a right here, it would be Eugene and Sylvia. And Eugene and Sylvia are plaintiffs in this lawsuit. And then you just say, what's your argument as to why you did use that address? Is that the only information you had? I think that's the only information that's stated in the affidavit. Did you see? And it's true that that's the address of the Secretary of State's house? Yes, it is. Oh, sorry. It is. So if you get to the parents' house, you're actually looking for the son. The parents say he does live here. Did you seize things at the parents' house? I seized firearms and ammunition at the parents' house. That's attachment A, I believe, to the complaint. It listed the things that were seized from each of us. And do you know whose guns those ended up being? In other words, were they the parents' or were they the sons'? I believe some of them, at least, were eventually returned to the parents. But, of course, the agents believe they belonged to the sons. And the question here is whether the agents had come to cause to believe that he lived there and that they would find evidence of the crime's charge in that location. And the plaintiff's burden is to show that they did not have a reasonable belief, did not have a probable cause for that search warrant. And they haven't made allegations sufficient to establish that under Ashcroft. So, again, for example, plausible allegations would be things like he had a voting address someplace else, everybody knows he lives on the outskirts of town, he doesn't live in this house, it was all over town that he had separated from his parents, and therefore it's unreasonable for the government to rely on this one driver's license. That's correct. But there's nothing like that. There's nothing like that. There's nothing specific. And you say that's because they didn't raise this at the district court? They didn't make this specific allegation. But, as the court pointed out, I think if you're questioning Mr. Bostic, the only specific allegation of untruthfulness that they made about the affidavits at all was about the reliability of this confidential informant. They made many allegations in generalities that there were lies or misstatements in the affidavits, but none were anything more than general factual assertions. None were specific. And ICBA requires that those allegations be specific. I don't think there's any requirement in the Rules of Civil Procedure that the government has, or the defendants have the burden of asking for a more definite statement before they can move to dismiss the complaint for failure to state the claim. Did you try this case, Willow? No, I did not. So you weren't in the courtroom? No. You read all the transcripts? Of the criminal case? Well, this business about the Rule 12 motion, that was... Was that this case or the criminal case? This case had a Rule 12 motion. The criminal case was decided on a motion for judgment. Okay, so you handled this case, Willow. I did not. You didn't handle it? But I read the record. I had some involvement in the criminal case as well. Here's what I'm getting at. I read the language that your fellow counsel was relying upon in the motion, or in the response, that he thinks is sufficient to have requested the permission to amend the complaint. Now, did he say anything that you found poorly? Was there argument? He stood up and said, Look, I can cure all this, please let me amend the complaint? He said, let me amend the complaint, I believe. But he never said, if I were to amend the complaint, I could make sufficient allegations under the law. I could allege X, Y, or Z that would satisfy the pleading requirements. And he never offered an amended complaint. He never offered, even orally, what allegations could be in such an amended complaint. And as Judge Pearson pointed out, he had already amended his complaint once. And I believe he represented that this motion to dismiss was somewhat premature, but it was at least six months after the original complaint, before it was decided. Of course, they had access to all of the materials from the criminal case. So although there hadn't been discovery, there was a large amount of information available to them from the criminal case. Can I follow up on that? I know you haven't even tried the criminal case, but because the government had gone through its case in chief, there should have been provided at least GINSAC material. Yes, I believe that virtually all of the grand jury material had been provided in discovery. So it's your position, then, that Plaintiffs' Council would have had access to that, transcripts even of grand jury testimony, that if there were falsities in there, would have been available for the Second Amendment? That's correct. Assuming he could get that from his client's criminal defense lawyer, they would have had access to that. Thank you for pointing that out. And Mr. Vosick, if he cares to, can say what his involvement was at that level. And then just this other question about the criminal case. To your knowledge, based upon your review of the transcript, did any government witness take the stand and admit a falsity, admit that there was something included in any affidavit relied upon by the court that might support the plaintiff's position here? No. And there were suppression motions made in the criminal case, which the district judge here, Judge Drain, referred to. And those motions were under Frank's, and they did not get adventure hearings on those motions because the district judge in the criminal case decided that the allegations were insufficient to warrant an adventure hearing. Now, I need to point out again that we incorrectly relied on issue preclusion to say that the plaintiffs were not entitled to relitigate those suppression issues, and that's not correct. But it certainly was proper for Judge Drain to take into account the numerous times that the validity of these search warrants had been considered by the issuing federal magistrate, by the federal magistrate to whom the motion to suppress was referred, and by the judge in the criminal case, all of whom found that these search warrants were valid and stated probable cause. So you are saying that those events are persuasive or at least indicative, but not decisive. They're not decisive, but they do indicate that the agents were reasonable in relying on these warrants and that the warrants did state probable cause. And they absent any specific allegation that their new allegation that there was an untrue statement in them, it was appropriate for Judge Drain to dismiss the complaint as to that. There's a similar response to the malicious prosecution claim. This court is saying you can bring a Fourth Amendment constitutional claim for malicious prosecution. But again, as a matter of law, the complaint does not state a claim for malicious prosecution. The indictment itself is prima facie evidence that there was probable cause to prosecute. And again, plaintiffs have not made any sufficiently specific allegations to get beyond the motion to dismiss. And that's the standard. Drain jury has properly handled that the indictment is fair on its face and that constitutes probable cause. That's correct. That's how you show an indictment is not fair on its face, if you look at that law. Well, an indictment could have a defect that's obvious on its face, a jurisdictional defect. It doesn't name the elements. Right, exactly. It doesn't assert the elements of an offense. But otherwise, in the criminal arena, it's conclusive that you can't look behind the indictment. In a civil case, courts have said that if you can show misconduct, it may be appropriate. But it's still prima facie evidence of probable cause. And we don't have any of the showings that have been recognized as possible to test the validity of an indictment here. Unless the court has questions about the first or second indictment claims, I believe those are covered in our brief. Okay. Thank you, counsel. Ms. Bostic, you have five minutes for rebuttal. Thank you. What I did with Judge Drain ended here. And this is on page 19 of my brief to this court. I listed over three pages. No, actually three and a half. Citations to Judge Roberts' decision. One of the more important ones is on page 19 of the brief. The ECF number is page 26. The document number is page 19 at the bottom. Under 3B, she acknowledged that she relied on government representations in denying certain pretrial motions for certain instructions and evidence sufficiency. I think there's an inference there that there was a lot that was represented to her at pretrial that simply did not come out during trial and support the things that they had said earlier. Now, in terms of the GenSec material, I may have missed it, but I think the only GenSec information that I saw was testimony of government agents. But you're not actually complaining about what happened during the trial. You're complaining about the initial insurgency. And the arrests, right, and the imprisonment. So let's assume for a second that the government made some representations that were either false or that they simply couldn't prove up during the trial during pretrial motions for jury instructions and evidence sufficiency. So let's assume that's true. You say that's important, but I'm wondering, so what? Well, I put that list in there to demonstrate that if given the opportunity, we could have taken those things that she specifically put in her ruling, done the background, found the detail, found the specific testimony or the specific search warrant affidavits or other allegations and created the specificity that they were seeking. But I think it's incomplete. Well, she doesn't say that – certainly some district judges have done things like saying the government presented me with evidence that I now believe is false. Obviously, you could have used that if she said it, but she didn't. These are things that basically says the government presented in court a weak case. Now, that happens a lot without creating civil liability, right? Yes, sir. So you're right. She excoriates the government quite well. But at least as I read those, and I did read them pretty carefully, it was hard to see any of them that affirmatively advanced your case. Now, when you said, well, we could have investigated further and found out why she said that, but you can't depose the judge. You've got the record, right? That's not – Not her statement. Right, and that's not what I meant. It would be my job as plaintiff's counsel to dig through the record and articulate specifically. Probably that's what you should have done before you filed the case or before the first amendment. Well, but I have – I mean, I've interviewed my clients, so I know where it would develop. I mean, they would be the ones who would know what the falsity was or most likely. Some of them, yes, a lot of them. But the amendment, much has been made of my first amendment complaint, that was to add Mr. Stone, Jr. The motion, the individual defendant's motion to dismiss didn't come until two months after the first amendment complaint. So I don't have the ability to have them identify exactly what it is they're saying was too weak. You know, if – I mean, I have a 27-page complaint, as it is. If there is a heightened pleading standard, if those allegations, as I've stated them in Rule 8 fashion, are not sufficient, I could have a 54-page complaint. If that's what I need to do, I am absolutely willing to do it. But I think I reasonably rely on the standards of Rule 8 and the absence of any heightened pleading requirement in Rule 9 or any interpretations. And let's assume that you're all right about that. I don't know that anybody's questioning everything that you've said up to that point. When you say you want a do-over, normally people are expected to tell us what the basis is of the do-over, and that's what we're focusing in on. You can't or won't tell us what this amended complaint is going to say in connection with the various – with the omissions or the explicit falsities. And I rely on inferences from Judge Roberts' ruling. And if that was my mistake, then that was my mistake. But that's where I think, in a light most favorable to my clients, inferences existed, so that we should have been given the opportunity to provide that detail. Okay. Anything else you want to apologize? Thank you. Thank you. That case will be submitted. The remaining items on the docket cases will be submitted on briefs, and we may adjourn for it.